UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT JOHNSON, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 1:12-cv-1600-TWP-DKL |
| BILL WILSON, Superintendent, Indiana State Prison, | ) ) ) ) |
| Respondent. | ) ) |

## ENTRY ON PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on a Petition for Writ of Habeas Corpus filed by Petitioner Robert Johnson ("Johnson"). (Filing No. 1). Johnson was convicted of two counts of murder and sentenced to two consecutive fifty-five year terms. Challenges to his murder convictions were rejected by the Indiana state courts and this action followed. For the reasons explained in this Entry, Johnson's Petition for Writ of Habeas Corpus must be **DENIED.** In addition, the Court finds that a certificate of appealability should not be issued.

## I. BACKGROUND

The State of Indiana charged, and Johnson was convicted of, the murders of Tamnika Powell and her newborn son. Johnson's convictions and sentences were affirmed on appeal in *Johnson v. State,* No. 49A04-0402-CR-113 (Ind.Ct.App. 2005) (*Johnson I*). Johnson's petition for transfer was denied on August 25, 2005. His petition for post-conviction relief was denied on October 4, 2010, and the denial of his petition for post-conviction relief was affirmed on appeal in *Johnson v. State*, No. 49A02-1010-PC-1242 (Ind.Ct.App. 2011) (*Johnson II*). The Indiana Supreme Court denied Johnson's petition for transfer on January 26, 2012.

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *Daniels v. Knight,* 476 F.3d 426 (7th Cir. 2007). Therefore, the Court adopts the summary of the evidence made in *Johnson I*:

> The facts favorable to the conviction are that Johnson lived with Tamnika Powell and their young son, Robert. Powell was pregnant and due to deliver on May 27, 2003. At about 5:00 a.m. on May 10, 2003, Johnson placed a 911 phone call and stated that he heard someone walking through his house when he woke up. He also stated that he had just shot his pregnant wife. Deputies Bill Carter and Gary Judd of the Marion County Sheriff's Department arrived at Johnson's house approximately three minutes after Johnson made the call. When the deputies arrived, Johnson was sitting calmly on the front porch holding Robert. Deputy Judd spoke with Johnson while Deputy Carter checked the house. He found Tamnika bleeding laying face down in the bedroom. He did not detect a pulse. Emergency medical personnel arrived on the scene and attempted to resuscitate Tamnika, but were unsuccessful. Emergency personnel noted that Tamnika was eight or nine months pregnant, and she was transported to Wishard Memorial Hospital.
>
> At the hospital, Dr. Victoria Palmer-Smith performed an emergency Cesarean section on Tamnika's body and delivered a boy. The child was blue rather than pink in color, was in respiratory distress, did not move spontaneously, and his heartbeat was extremely slow for a newborn — approximately thirty beats per minute. He was immediately placed on a respirator and sent to neonatal intensive care. After he was transferred to neonatal intensive care, the baby experienced several episodes of cardiorespiratory arrest, and finally died on May 11, 2003, the day after his birth.
>
> An autopsy was performed on Tamnika's body. It was determined that she had suffered a laceration on the back of her head that was consistent with being struck by a two-by-four board, as well as three gunshot wounds. At least one of the bullet wounds was inflicted while Tamnika was lying down. An autopsy on the baby's body showed that the infant was full term or nearly full term at the time of birth and was completely normal in development. The autopsy revealed the baby's organs were damaged as a result of lack of oxygen, and the cause of death was determined to be oxygen deprivation. As a result of the shooting, Johnson was charged with two counts of murder, one for each victim, i.e., Tamnika and her infant son.
>
> Johnson was incarcerated at the Marion County Jail before trial. He shared a cell with Leon Smith, whom he had known for ten years. Smith had two D felony cases pending against him. One evening, Johnson told Smith that he (Johnson) had been out drinking one night with friends, one of whom told him that he (Johnson) might not be the father of the baby Tamnika was carrying.

2

Johnson told Smith that he and Tamnika argued when he got home, and the confrontation became physical. After throwing Tamnika around the laundry room, Johnson went to the bedroom and retrieved a pistol. When Tamnika came down the hallway, Johnson shot her twice with a pistol. After she had fallen to the floor, Johnson retrieved a rifle and shot her where she lay. According to Johnson, Tamnika was still alive when he called the police.

After Johnson had relayed the above information to Smith, Smith asked his girlfriend to contact the Marion County Prosecutor's Office (the Prosecutor's Office). After speaking with Smith, the Prosecutor's Office agreed to drop the two D felony charges against Smith in exchange for his testimony against Johnson at Johnson's trial. Thereafter, Smith obtained more information from Johnson and provided it to the Prosecutor's Office. Johnson was convicted as set out above following a jury trial.

*Johnson I*, at pp. 2-4.

## II. **JOHNSON'S CLAIMS**

Johnson's habeas claims are these: 1) he was denied the effective assistance of trial counsel for failure to: a) timely move to suppress two pieces of wood found during a warrantless search; b) object to the admission of the wooden boards when they had been tampered with; and c) investigate Leon Smith's name; 2) he was denied the effective assistance of appellate counsel for failure to challenge a warrantless search and seizure at his home; 3) the prosecutor committed prosecutorial misconduct and; 3) his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004).

## III. **APPLICABLE LAW**

**A.   Scope of Review**

This habeas action is brought pursuant to 28 U.S.C. § 2254(a). "A necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States." *Rose vs. Hodges*, 423 U.S. 19, 21 (1975). The scope of federal habeas review is limited. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is only noncompliance with *federal* law that renders a

State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2254(a). And we have repeatedly held that federal habeas corpus relief does not lie for errors of state law. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (some internal citations and quotations omitted).

## B.  The Antiterrorism and Effective Death Penalty Act of 1996

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241(c)(3), *et seq.*, govern this case because Johnson filed his petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

> Recognizing that state courts are no less experienced than federal courts in dealing with claims of ineffective assistance of counsel, *Burt v. Titlow,* 571 U.S. – ––, 134 S. Ct. 10, 15–16, 187 L.Ed.2d 348, 2013 WL 5904117 at *4 (U.S. Nov. 5, 2013), federal law erects a high deferential standard . . . for claims that a state court erred. Federal habeas relief is available only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on a [sic] unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013).

*Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). As to claims which the state courts decided on the merits, the AEDPA bars relitigation of the claims except in the foregoing three circumstances. The decision made by a state court is deemed to be contrary to clearly established federal law "'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Emerson v. Shaw,* 575 F.3d 680, 684 (7th Cir. 2009) (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The decision by a state court is deemed to involve an unreasonable application of clearly established federal law "'if the state

4

court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case.'" *Emerson,* 575 F.3d at 684 (quoting *Bell,* 535 U.S. at 694). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)).

> A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir. 1998). A petitioner's challenge to a state court decision based on a factual determination under § 2254(d)(2) will not succeed unless the state court committed an "unreasonable error," and § 2254(e) (1) provides the mechanism for proving unreasonableness. *See Ward v. Sternes,* 334 F.3d 696, 703–04 (7th Cir. 2003).

*Lee v. Zatecky*, 1:12-cv-451-JMS-DML, 2013 WL 3936216 *3 (S.D. Ind. July 30, 2013).

As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *see also Miller–El v. Cockrell,* 537 U.S. 322, 337 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners."). "The petitioner carries the burden of proof." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

## IV. DISCUSSION

A.  **Ineffective Assistance of Counsel**

Johnson's first claims focus on the performance of his counsel—at the guilt phase of his trial and in his direct appeal. This is hardly surprising because complaining about a lawyer's performance after the fact is "a favorite tactic of an unsuccessful criminal defendant," *Ford v. Israel*, 701 F.2d 689, 692 (7th Cir. 1983), and this case is no exception.

> We have observed in the past that criminal defendants frequently "demonize" their lawyers. "If we are to believe the briefs filed by appellate lawyers, the only reasons defendants are convicted is the bumbling of their predecessors. But lawyers are not miracle workers. Most convictions follow ineluctably from the defendants' illegal deeds."

*United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002) (quoting *Burris v. Farley,* 51 F.3d 655, 662 (7th Cir. 1995)).

   1.  *Strickland v. Washington*

The Sixth Amendment guarantees a criminal accused the right to assistance of counsel, and "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). This means "representation that does not fall 'below an objective standard of reasonableness in light of prevailing professional norms.'" *Bobby v. Van Hook,* 558 U.S. 4, 16 (2009). This guarantee exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984).

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. This standard requires a two-part inquiry. "To prevail on an ineffective-assistance[-]of-counsel claim under *Strickland,* a petitioner must

demonstrate that his counsel's assistance was objectively unreasonable and resulted in a substantial risk of prejudice." *Brown v. Finnan,* 598 F.3d 416, 419 (7th Cir. 2010).

Deficient performance is "measured against an objective standard of reasonableness, under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (citations omitted). In making this determination, the court considers "the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct . . . ." *United States v. Lindsey,* 157 F.3d 532, 534–35 (7th Cir. 1998); *see also Hough v. Anderson,* 272 F.3d 878, 891 (7th Cir. 2001) (holding that the court must consider the totality of the evidence before the judge). There is a strong presumption that "any decisions by counsel fall within a wide range of reasonable trial strategies." *Lindsey,* 157 F.3d at 534-35. "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987)). "There are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689. There comes a point where a defense attorney will reasonably decide that another strategy is in order, thus "mak[ing] particular investigations unnecessary." *Id.* at 691.

The second *Strickland* prong is prejudice. To satisfy this element, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Blake v. United States,* 723 F.3d 870, 878–79 (7th Cir. 2013) (internal quotations and citations omitted); *see also Rodriguez v. United States,* 286 F.3d 972, 983 (7th

Cir. 2002) (to establish prejudice under the second prong, "the unprofessional errors of counsel must be so egregious 'that the trial was rendered unfair and the verdict rendered suspect.'") (citation omitted).

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of a case such as Johnson presents, however, the AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard . . . was incorrect but whether that determination was unreasonable--a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009) (internal citations and quotations omitted). In applying AEDPA's "difficult to meet . . . and highly deferential standard," we must give the Indiana courts' decisions "the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotations and citations omitted).

Johnson's ineffective assistance of counsel claims were presented to the Indiana state courts in *Johnson II*. The Indiana Court of Appeals recognized and recited the correct *Strickland* standard. *Id.* at p. 6.

   2.   **Guilt Phase**

Johnson claims that counsel rendered ineffective assistance by failing to investigate Leon Smith's real name. The Indiana Court of Appeals reviewed this issue and explained:

> At trial, Johnson's cellmate testified that his name was Leon Smith, but he also admitted that he has used five or six aliases in the past, including the alias of Brian Johnson. Smith/Johnson also testified that he is a convicted robber and had pending Class D felony charges against him. He stated that he agreed to testify against Johnson in exchange for the State's promise to dismiss the pending Class D felony charges.
>
> Despite the fact that Smith/Johnson's own testimony reflected poorly on his credibility, Johnson claims that if trial [counsel] had investigated Smith/Johnson's true identity, "the jury would have learned that Smith/Johnson was lying even about his real name." Appellant's Br. at 11. Because the jury was well aware that Smith/Johnson had used several aliases, we cannot conclude that Johnson was prejudiced because his trial counsel failed to discover that his cellmate's legal name was Brian Johnson and not Leon Smith. Moreover, in its closing argument, the State informed the jury that they could disregard Smith/Johnson's testimony because "he doesn't add anything to this case that's not proven by other means." Trial Tr. p. 445.
>
> For all of these reasons, we conclude that Johnson did not suffer any prejudice from trial counsel's alleged deficient performance, and therefore, his trial counsel was not ineffective.

*Johnson II.* at p. 10. There was in this analysis no decision "contrary to" clearly established federal law as determined by the Supreme Court of the United States. Similarly, this decision—in which the Indiana Court of Appeals concluded that Johnson had failed to show prejudice—was not an unreasonable application of *Strickland* because the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000).

Johnson's second specification of ineffective assistance of counsel at the guilt phase is that counsel was ineffective by not timely moving to suppress two pieces of wood found during a warrantless search and not objecting to the admission of the wooden boards when they had been tampered with. "When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, [the Seventh Circuit] [has] required that a defendant prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (citing *Owens v.*

*United States*, 387 F.3d 607, 610 (7th Cir. 2004); *United States v. Stewart,* 388 F.3d 1079, 1084 (7th Cir. 2004)). "If there was no underlying constitutional violation, a motion to suppress would have been futile and counsel could not be viewed as ineffective for failing to present such a motion." *A.M. v. Butler,* 360 F.3d 787, 795 (7th Cir. 2004) (citing *Strickland,* 466 U.S. at 686). Here, the Indiana Court of Appeals reviewed Johnson's claims and explained:

> During Johnson's trial, Detective Gullion testified that he returned to Johnson's home after the shooting without a search warrant, and during the warrantless search he seized the broken pieces of wood. Johnson also argues that counsel was ineffective for failing to object to the admission of the wooden boards because they had been tampered with. Specifically, Johnson alleges that law enforcement officers moved the boards, and "it would have been very easy for blood to have gotten on the board through a transfer from the blood stain on the floor." Appellant's Br. at 10.
>
> The State used this evidence to argue that the injury to the back of [sic] Tamnika's head was caused by blunt force trauma and hypothesized that Johnson must have struck Tamnika with the broken wooden board. Specifically, the State argued:
>
>> The two inch gash at the back of her head that caused this much bleeding. It wasn't an old wound. It was a new one and you heard Dr. Radentz tell you it wasn't caused by falling on this carpet. It was caused by blunt force trauma. . . . Is this an accident? This is no accident. This is taking a board and bashing it on the back of your girlfriend's head just before you plow her down with two different guns. That's what this is. This isn't an accident. Why, we don't know.
>
> Trial Tr. p. 427. In response, trial counsel argued that Tamnika's blood was likely found on the board because of the amount of blood in the bedroom, the movement of her body by emergency medical personnel, and the carelessness of law enforcement personnel who stepped in the blood at the scene. Id. at 436. Counsel also noted that there was no evidence of skin or hair follicles on the board and no evidence of wood splinters in the laceration on Tamnika's head. *Id.*
>
> Trial counsel failed to file a motion to suppress but did move to exclude the blood stained pieces of wood and any other evidence obtained during the warrantless search. The motion was denied, and counsel did not contemporaneously object to the admission of the exhibits at trial. Assuming for the sake of argument that trial counsel's performance was deficient when he failed to either file a motion to suppress or object to the admission of the exhibits during trial, we cannot conclude that Johnson was prejudiced by the allegedly deficient performance.

> The admission of the blood-stained pieces of wood certainly cast doubt on Johnson's claim of mistake of fact. But the other overwhelming evidence supporting his murder convictions renders his claim that he thought Tamnika was an intruder "implausible and incredible." See Appellant's app. p. 66.
>
> The State presented evidence that Tamnika suffered blunt force trauma to her head, and that she was shot three times. By Johnson's own admission, he shot at Tamnika multiple times with a 9 millimeter handgun, and then "crawled into [his] closet, grabbed [his] rifle…and shot from the closet." Trial Tr. p. 377. The State presented evidence that Tamnika was likely laying on the ground when she was shot with the rifle. Johnson admitted that he did not try to render any aid to Tamnika after she was shot. Id. at 398.
>
> Johnson also testified that in the eight months he lived at the residence it had not been burglarized, and the house had a surveillance system with cameras at the front door and an alarm. Johnson stated that the alarm was activated and the doors were locked. Id. at 388-89. Despite his home's security system, Johnson testified that when he heard the cracking sound in the hallway, he grabbed the handgun from the nightstand next to the bed and immediately started shooting.
>
> No reasonable person could believe that Johnson would not have at least checked the bed he was sleeping in to determine whether his pregnant girlfriend and two-year old son remained in the bed with him before he started shooting at the bedroom door. To the contrary, the evidence presented leads only to the conclusion that Johnson intended to kill Tamnika when he shot her multiple times with two different firearms. For these reasons, Johnson was not prejudiced by his trial counsel's failure to file a motion to suppress and or object to the admission of the two bloodstained pieces of wood.

*Johnson II,* pp 7-9 (noting the post-conviction court's conclusion that the evidence would have been admissible under the inevitable discovery exception to the exclusionary rule because Detective Gullion later obtained a search warrant). Again, the Indiana Court of Appeals took the constitutional standard seriously and produced an answer within the range of defensible positions. Because this Court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Johnson's claim of ineffective assistance of counsel at trial fails to support an award of habeas corpus relief. *Murrell v. Frank,* 332 F.3d 1102, 1111 (7th Cir. 2003) (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

Neither the Indiana Court of Appeals' methodology nor its decision was an objectively unreasonable application of *Strickland's* performance prong or its prejudice prong. Because "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997) (citations omitted), and because no such clear error – and no error at all – occurred here, Johnson is not entitled to federal habeas relief based on counsel's failure to move for suppression of the wood found during a warrantless search and failure to object to the admission of the wooden boards.

### 3. Direct Appeal

The right to the effective assistance of counsel extends to a direct appeal. *Page v. Frank,* 343 F.3d 901, 909 (7th Cir. 2003). Johnson claims that he was denied the effective assistance of counsel in *Johnson I* when counsel failed to challenge a warrantless search and seizure at his home. The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003).

> The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient.

*Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005). Prejudice is established if the issue not raised "may have resulted in a reversal of the conviction or an order for a new trial." *Lee,* 328 F.3d at 901. The Indiana Court of Appeals reviewed Johnson's ineffective assistance of appellate counsel challenge and explained:

> In this case, if we assume the detective's warrantless search was unlawful,[FN2] we cannot conclude that admission of the broken pieces of wood constitutes fundamental error. The ultimate issue the jury was asked to resolve in this case was whether Johnson deliberately killed Tamnika or whether she was shot because he mistook her for an intruder. The pieces of wood were admitted to support the State's hypothesis that Johnson and Tamnika had fought before he shot her and he struck her in the head with the wooden board causing it to break.
>
> It was undisputed that Tamnika suffered a laceration to her head likely caused by blunt force trauma. If the boards had not been admitted at trial, the remaining evidence, i.e. the laceration to Tamnika's head and the manner of the shooting, would be more than enough evidence to support Johnson's conviction for murder. Therefore, appellate counsel would not have prevailed had he raised the argument that admission of the broken pieces of wood constituted fundamental error. Because the unraised issue was not "clearly stronger' than the issues appellate counsel raised in Johnson's direct appeal, we conclude that Johnson was not subjected to ineffective assistance of appellate counsel.

*Johnson II*, pp. 12-13.

The Indiana Court of Appeals carefully applied *Strickland* to the contention that appellate counsel was ineffective for failing to appeal the warrantless seizure of the broken wood and that the admission of the broken pieces of wood was fundamental error. By finding that no such error occurred, the Indiana Court of Appeals then reasonably concluded that Johnson's counsel in his direct appeal had not rendered deficient performance by failing to include the warrantless seizure of the broken pieces of wood as asserted error at trial. *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001) ("It is not deficient performance to fail to raise an argument with no real chance of success."); *Freeman v. Attorney Gen.,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."); *Stone v. Farley,* 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

The United States Supreme Court has reminded courts exercising federal habeas jurisdiction that "[s]urmounting *Strickland*'s high bar is never an easy task." *Premo v. Moore,*

131 S. Ct. 733, 739 (2011). "[T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Id.* at 740 (*quoting Strickland,* 466 U.S. at 689–90). The deficient performance standard is rigorous. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, absent contrary evidence, "we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (quotation omitted).

Because this Court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Johnson's claim of ineffective assistance of counsel on appeal does not support the award of habeas corpus relief with respect to the omission of a claim that the admission of the broken pieces of wood was fundamental error in *Johnson I. Murrell v. Frank,* 332 F.3d at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

**B.     Prosecutorial Misconduct**

Next, Johnson claims that there was prosecutorial misconduct at trial based on the testimony of Leon Smith and the tampering of the broken wooden boards. The Indiana Court of Appeals reviewed this issue at post-conviction and determined that Johnson did not demonstrate that his prosecutorial misconduct claims were not available at trial or direct appeal and accordingly, they will not be considered as freestanding claims at post-conviction. *Johnson II*, pp. 13-14. This was an entirely normative application of Indiana law on the subject. *See Stephenson v. State,* 864 N.E.2d 1022, 1029 (Ind. 2007) (holding that freestanding claims of trial error, fundamental or otherwise, are not available in post-conviction proceedings).

"It is the rule in this country that assertions of error in criminal proceedings must first be

14

raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* 508 U.S. 962 (1993). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims *because the prisoner had failed to meet a state procedural requirement.*" *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991) (emphasis added). Once again, the Indiana Court of Appeals' finding that Johnson procedurally defaulted his prosecutorial misconduct claim is an independent and adequate state ground that precludes federal habeas review of Johnson's claim.

**C.     Sentencing**

Johnson's final claim is that his sentence runs afoul of the sentencing proscriptions set forth in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Johnson argues the 110-year sentence imposed by the state court is inappropriate. Specifically, Johnson argues that he "did not have any prior convictions and the trial court aggravated his sentences and ran them consecutively based upon four aggravating factors which were not submitted to a jury and proven beyond a reasonable doubt."

*Blakely* held that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301 (quoting *Apprendi at* 490 (2000)). The "statutory maximum" is initially the presumptive term and is the "maximum sentence the judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303 (emphasis in original). Here, Johnson

received the *presumptive* sentence on each count, not the maximum allowed under the statute. Imposing the 55-year presumptive penalty did not increase Johnson's penalty beyond the statutory maximum for each of the murder convictions. *See State v. Natale,* 184 N.J. 458 (N.J. 2005) (concluding that since "[o]ur Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term," and since "the 'statutory maximum' for *Blakely* is the presumptive sentence," the presumptive terms should be severed from the statute so that the relevant statutory maximum is the top of the sentencing range for the crime charged); *Smylie v. State,* 823 N.E.2d 679, 683-85 (Ind. 2005) (because the trial court "must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed," the sentencing scheme violates *Blakely*, and the appropriate remedy is for the jury to find facts of aggravation).

Similarly, the imposition of two consecutive fifty-five year terms did not increase the penalties for the murder convictions. This is permitted under the *Apprendi* regimen. *Almendarez-Torres v. United States,* 523 U.S. 224 (1998).

## V. <u>CONCLUSION</u>

Johnson's conviction and sentence withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of

federal statutory or constitutional law").[1] As the foregoing discussion demonstrates, this Court's view is that he received all that the Constitution requires.

> For a trial to be constitutionally sound requires . . . a trial where the prosecutor must prove all elements of a crime beyond a reasonable doubt in order to convict; where the prosecutor adheres to certain rules of conduct that guarantee a fair trial and a proper consideration of the defendant's theories and supporting evidence; where the jurors consider only evidence adduced by the parties and that a defendant has had an opportunity to rebut; and where a defendant enjoys the right to cross-examine adverse witnesses.

*Gall v. Parker,* 231 F.3d 265, 277-78 (6th Cir. 2000).

This Court has carefully reviewed the state record in light of Johnson's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The Supreme Court has clarified that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal[.]" *Ryan v. Gonzales,* 133 S. Ct. 696, 708 (2013) (quoting *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011)). A federal habeas court may overturn a state court's application of federal law only if it is so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with . . . [United States Supreme Court] precedents." *Nevada v. Jackson,* 133 S. Ct. 1990, 1992 (2013) (citing *Harrington,* 131 S. Ct. at 786). "This standard . . . is 'difficult to meet': To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster,* 133 S. Ct. 1781, 1786–87 (2013) (citing *Harrington,* 131 S. Ct. at 786–87).

---

[1]Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 468 (1938)).

The Indiana Court of Appeals' resolution of the claims Johnson has renewed in this action for habeas corpus relief is consistent with, and a reasonable application of, the constitutional standards established by the Supreme Court and contains a reasonable determination of the facts in light of the evidence presented. "When the state court's decision is one of severally equally plausible outcomes, § 2254(d) forecloses federal habeas corpus relief." *Bailey v. Lemke*, 735 F.3d 945, 951 (7th Cir. 2013) (citing cases) (internal quotations omitted).

For the reasons explained above, therefore, the Petition for Writ of Habeas Corpus of Robert Johnson is **DENIED.** Judgment consistent with this Entry shall now issue.

## VI.  CERTIFICATE OF APPEALABILITY

Having failed to make a substantial showing of denial of a constitutional right puruant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing ' 2254 proceedings, and 28 U.S.C. ' 2253(c), the Court finds Johnson has not shown that reasonable jurists would find it "debatable whether [this court] was correct in itsprocedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore DENIES a certificate of appealability.

**SO ORDERED.**

Date: 08/04/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph Martin Cleary
jcleary498@aol.com

Kelly A. Miklos
OFFICE OF THE INDIANA ATTORNEY GENERAL
kelly.miklos@atg.in.gov